## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 12:29 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth H. Palmer III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 30, 2020

Court of Appeals Case No. 19A-CR-2227

Appeal from the Marion Superior Court

The Honorable Alicia Gooden, Judge
The Honorable Richard Hagenmaier, Commissioner

Trial Court Cause No. 49G21-1803-F6-9356

**Pyle, Judge.**

## Statement of the Case

[1] Kenneth H. Palmer, III, ("Palmer") appeals his conviction, following a jury trial, for possession of a synthetic drug or a synthetic drug lookalike substance ("lookalike substance").[1] Palmer was charged by the State and convicted by the jury of possession of a lookalike substance as a Class A misdemeanor under INDIANA CODE § 35-48-4-11.5, but the trial court entered judgment of conviction for Palmer's offense of possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor and then sentenced him as a Class C misdemeanor.

[2] Palmer argues that the trial court abused its discretion by admitting evidence at trial and that the evidence is insufficient to support his conviction. The State cross appeals, arguing that the trial court erred by entering judgment of conviction and imposing a sentence on a non-existent offense of possession of a lookalike substance as a Class C misdemeanor under INDIANA CODE § 35-48-4-11.5. Palmer responds that the State is not authorized to raise its cross-appeal challenge.

[3] Concluding that Palmer's challenge to the trial court's evidentiary ruling is moot and that the evidence is sufficient to support Palmer's conviction, we affirm his conviction. Additionally, we conclude that the State is authorized to

---

[1] IND. CODE § 35-48-4-11.5 (repealed effective July 1, 2019). Palmer committed his offense in March 2018; therefore, this statute was in effect at the time of his offense.

raise its cross-appeal issue and that the trial court erred by entering a judgment and imposing a sentence under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor. Accordingly, we reverse the trial court's imposition of the Class C misdemeanor judgment and sentence and remand to the trial court with instructions to enter judgment of conviction on Palmer's possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class A misdemeanor and to resentence Palmer in accordance with that conviction.

[4] We affirm in part, reverse in part, and remand.

## Issues

1. Whether the trial court abused its discretion in its admission of evidence.

2. Whether the evidence is sufficient to support Palmer's conviction.

3. Cross-Appeal Issue: Whether the trial court erred by entering judgment of conviction and imposing a sentence on Palmer's conviction as a Class C misdemeanor where he had been charged and found guilty as a Class A misdemeanor.

## Facts

[5] On March 15, 2018, Indianapolis Metropolitan Police Department ("IMPD") narcotics officers and Lawrence Police Department SWAT members executed a federal search warrant for documents at a house on Whittier Place in Indianapolis ("the Whittier house"). One of the officers surveilled the Whittier house for approximately an hour before the police executed the warrant.

During that time, the officer saw a few people go into the house for three to four minutes and then leave.

[6] IMPD Detective Jose Navarro ("Detective Navarro") was the lead officer on the execution of the warrant. When the SWAT team entered the Whittier house, they found Palmer in a child's bedroom and Salatheo Moss ("Moss") near the front part of the house. In the living room, officers saw one bowl that contained cash and another bowl that contained multiple individually plastic-wrapped packages of a substance, which was later tested and determined to be a lookalike substance. Next to these bowls, the officers also saw a scale and a surveillance video monitor. Because the federal warrant was for documents, the officers paused their search and then applied for and obtained a search warrant for narcotics.

[7] The police arrested Palmer and placed him in handcuffs behind his back.[2] Detective Navarro read Palmer his *Miranda* rights and conducted a recorded interview of him at the scene. During the interview, Palmer told the detective that he did not live at the Whittier house and that he instead lived on Catherwood Drive ("the Catherwood address"). Palmer said that he had just arrived at the Whittier house about twenty minutes prior to the police arriving and that he had come to visit a female friend, who was not at the Whittier house at that time. Palmer denied that he had come to the Whittier house to

---

[2] The police also arrested Moss.

use marijuana. He told the detective that he did not use marijuana and had not used it in a couple of months. Palmer also told the detective that he did not know what was inside the Whittier house. The police searched Palmer's pants pockets and found $240.00 in one pocket and $147.00 in the other pocket. The police also found a cell phone in Palmer's back pants pocket. The police took the items recovered from Palmer's pockets and placed them into evidence envelopes.

[8] During the execution of the narcotics search warrant, the officers found marijuana and lookalike substances throughout the house as well as various items that suggested a drug dealing environment. The house contained video monitors in multiple rooms of the house, and these monitors provided live footage from security cameras that had been placed in four locations outside of the house. These video monitors were located in the living room, the kitchen, the main bedroom, and the basement.

[9] In the main bedroom, the police found mail with Palmer's name on it. Specifically, the envelope contained a T-Mobile bill, dated January 4, 2018. The envelope was addressed to Palmer at the Catherwood address, and it was located on top of the dresser. The police also found more than forty-six grams of marijuana in a mason jar on top of a dresser and a gun in the top dresser drawer. Additionally, the officers found a lookalike substance in two different locations of the main bedroom. Specifically, they found a large baggie containing almost 200 grams of a lookalike substance inside a cooler-type bag

containing an Air Jordan logo, and they found a much smaller amount of the lookalike substance underneath the bed.

[10] Aside from the main bedroom and living room, the officers also found marijuana and a lookalike substance in other areas of the Whittier house. Specifically, in the basement, they found a trash bag filled with knotted baggies containing more than 100 grams of a lookalike substance, and, in the bathroom, they found more than six grams of a lookalike substance in a laundry bag and a gram of marijuana in the linen closet. Additionally, the officers found scales and baggies in multiple rooms of the Whittier house and ammunition in the basement.

[11] While still at the Whittier house, Palmer asked an officer to get his shoes and his jacket, which were both in the main bedroom. An officer got Palmer's Air Jordan shoes and his Chicago Bulls jacket and searched them before he gave them to Palmer. The officer found a "knotted baggie" in Palmer's jacket pocket, and Palmer told the officer that it was a "dime" bag of "marijuana[.]" (Tr. Vol. 2 at 209). The substance was later tested and found to be a synthetic drug lookalike substance.

[12] Shortly thereafter, Palmer asked an officer if he could make a few phone calls, and the officer agreed to let him do so. The officer took Palmer's cell phone from the evidence envelope and, because Palmer was still handcuffed, asked Palmer for his passcode so the officer could unlock the phone. Palmer's phone, which was an Android phone, used a passcode that was a design made on a

square full of dots. Palmer instructed the officer how to make the design, and the officer drew the design on the envelope. The officer opened the phone and held it up so that Palmer could make three phone calls. The officer then put Palmer's phone back into the evidence envelope.

[13] The State ultimately charged Palmer with: Count 1, Level 4 felony unlawful possession of a firearm by a serious violent felon; Count 2, Level 6 felony dealing in marijuana weighing more than 30 grams; Count 3, Level 6 felony possession of marijuana with a prior drug conviction; Count 4, Class A misdemeanor dealing in a synthetic drug or a synthetic drug lookalike substance (based on possession with intent to deliver); and Count 5, Class A misdemeanor possession of a synthetic drug or a synthetic drug lookalike substance.[3]

[14] Thereafter, in December 2019, the police obtained a search warrant to search Palmer's phone. The officer unlocked the phone by using the passcode that Palmer had previously given to the police. When a police officer searched the phone, he saw that Palmer had a Gmail address. Because Google collects location data via GPS, cell phone tower, and Wi-Fi ("Google location data") from a person's device when the person accesses his or her Gmail account, the police, in April 2019, sought and obtained a search warrant to get Google's location data associated with Palmer's phone. Police obtained the Google

---

[3] The State filed an initial charging information in March 2018 and then an amended information in June 2018.

location data to show that Palmer actually lived at the Whittier house and not the Catherwood address.

[15] Palmer then filed a motion to suppress the Google location data. Palmer argued, in relevant part, that this evidence should be suppressed because the officers had violated his Fourth and Fifth Amendment rights by failing to give him a *Pirtle* advisement before he gave them the passcode to his phone. The trial court held a hearing on Palmer's motion to suppress in August 2019. During the hearing, Palmer argued that his Fourth Amendment rights had been violated because there had been a warrantless search. To support his Fifth Amendment argument, Palmer relied on *Seo v. State*, 109 N.E.3d 418 (Ind. Ct. App. 2018), *trans. granted*, which was a case dealing with the Fifth Amendment protection against compelled self-incrimination. The parties acknowledged that the Indiana Supreme Court had already granted transfer on *Seo* at the time of the hearing.[4]

[16] During the suppression hearing, Detective Navarro testified the officers had not given Palmer a *Pirtle* warning before they had asked for Palmer's passcode because the officers were not searching Palmer's phone and were instead simply letting him make some phone calls. The State argued that, unlike in *Seo*, Palmer's Fifth Amendment right had not been violated because Palmer had not been compelled to give his phone passcode. The trial court agreed with the

---

[4] The Indiana Supreme Court granted transfer on December 6, 2018 and later issued its opinion on June 23, 2020. *See Seo v. State*, 148 N.E.3d 952 (Ind. 2020).

State that Palmer had not been compelled to give his passcode, making the facts of Palmer's case distinguishable from *Seo*. The trial court pointed out that Palmer had first been advised of his *Miranda* rights and had given a full statement to police before he had "volunteered the information to the policeman so that he could make a call[.]" (Tr. Vol. 2 at 19). The trial court also noted that the police had obtained a search warrant to search the phone. The trial court denied Palmer's motion to suppress.

[17] The trial court held a two-day jury trial in August 2019. Prior to trial, the parties discussed the fact that INDIANA CODE § 35-48-4-11.5—the statute under which the State had charged Palmer with possession of a lookalike substance in Count 5—and INDIANA CODE § 35-48-4-10.5—the statute under which the State had charged Palmer with dealing in a lookalike substance in Count 4, had been repealed effective July 1, 2019. Palmer moved to dismiss Counts 4 and 5. The State argued against the dismissal, noting that the law regarding these lookalike substances had been moved to different statutes and that lookalike substances were now categorized under new terminology. The trial court pointed out that the law in effect at the time of Palmer's offense would control. The trial court asked Palmer if he had any case law to support his argument, and he "concede[d]" that he had not done any research into it. (Tr. Vol. 2 at 45). The trial court denied Palmer's request to dismiss the two counts.

[18] As an alternative to dismissal, Palmer sought to have the trial court reduce the level of the offenses to Class C misdemeanor based an application of the doctrine of amelioration, stating that there were some statutes relating to

possession of and dealing in a lookalike substance offenses that classified the offenses as Class C misdemeanors. The trial court indicated that it was going to apply the law in effect at the time of the offense but that Palmer could re-raise the issue at the end of the presentation of evidence if he had case law to support the argument to reduce the offense. The trial court also stated that it could consider the sentencing aspect of the amelioration argument at sentencing.

[19] During the jury trial, in regard to Counts 4 and 5, the State's case was based on the premise that the material at issue was a lookalike substance, not a synthetic drug. Additionally, the State sought to prove that Palmer had constructive possession of the gun, marijuana, and lookalike substances inside the Whittier house. Palmer's theory of defense was that the State could not show that he had possessed the gun, marijuana, and lookalike substances in the Whittier house as charged because he did not live there and had merely been visiting inside the house.

[20] The various officers who had been involved in executing the search warrants at the Whittier house and the forensic chemist who had tested the substances found in the house and in Palmer's pocket testified to the facts above. In its attempt to show that Palmer actually lived at the Whittier house and not the Catherwood address, the State introduced the Google location data from Palmer's phone for the specific period of March 8, 2018 to March 15, 2018. Palmer objected to this evidence, asserting the same objection as in his motion to suppress. The officer who had processed the Google location data testified that the data showed that Palmer had spent time at both the Whittier house and

the Catherwood address during that week but that Palmer had spent "more" time at the Whittier house than the Catherwood address. (Tr. Vol. 3 at 150).

[21] After the State rested, Palmer moved for judgment on the evidence. He argued, in part, that the charges relating to the lookalike substance should be dismissed because there was "nonexclusive constructive possession" in this case and that the State had "failed to have something more than proximity." (Tr. Vol. 3 at 156). The State argued that Palmer's argument should be denied because he "had a baggie in his own jacket pocket that he [had] thought was marijuana" but that ended up being a lookalike substance. (Tr. Vol. 3 at 156-57). The trial court denied Palmer's motion.

[22] During closing arguments, the State argued that Palmer was guilty of possession of lookalike substance in Count 5 because he had "actual possession" of a "dime bag" of the lookalike substance in his pocket. (Tr. Vol. 3 at 160, 161). When arguing the elements of Count 4—which was based on possession of a lookalike substance with intent to deliver—the State argued that Palmer's actual possession of the lookalike substance in his pocket could support the possession element of Count 4. It then argued that the jury needed to decide whether Palmer had intended to consume that lookalike substance in his pocket or deliver it to someone else. The State alternatively argued that Palmer had constructive possession of the large quantities of lookalike substances found in the house and that he had the intent to deliver. Additionally, the State relied upon constructive possession to argue that Palmer was guilty of unlawful possession of a firearm in Count 1, dealing in marijuana

(based on possession with intent to deliver) in Count 2, and possession of marijuana in Count 3. When arguing that Palmer had constructive possession, the State pointed, in part, to the items found in plain view in the house, the evidence of drug dealing, Palmer's personal items found at the house, and the Google location data placing Palmer at the house for "a significant amount of time[.]" (Tr. Vol. 3 at 167).

[23] During Palmer's closing argument, his counsel argued that this case was "very simple" and that it came down to the State being required to prove "possession of three items[:] the gun; marijuana; and a look alike synthetic drug." (Tr. Vol. 3 at 176). Defense counsel argued that the State could not show that Palmer had constructive possession of those items because it could not show that Palmer knew the items were there or that he had intent to control them. Palmer's counsel told the jury that if the State had not proven both that Palmer knew the items were there and that he had the ability to control them, then it "must return verdicts of not guilty." (Tr. Vol. 3 at 178). When discussing the lookalike substance found in Palmer's jacket pocket, counsel questioned why the officers had not found the substance when they had searched the bedroom. Counsel also questioned why Palmer would ask for the jacket if he knew that it had drugs in it. Defense counsel then stated that it "[d]oesn't make any sense" and that it "ain't proof beyond a reasonable doubt." (Tr. Vol. 3 at 178).

[24] Palmer offered lesser-included jury instructions on Count 4 and 5, and the trial court gave those instructions. Specifically, the lesser-included instruction for Count 4 provided that, if the State failed to prove beyond a reasonable doubt

that Palmer had knowingly or intentionally possessed the lookalike substance with intent to deliver as required to find him guilty of Class A misdemeanor dealing in synthetic drug lookalike substance, then it could consider whether he had committed dealing in a lookalike substance as a Class A infraction, which required the State to prove by the greater weight of the evidence that Palmer had possessed, with intent to deliver, a synthetic drug lookalike substance. The lesser-included instruction for Count 5 provided that, if the State failed to prove beyond a reasonable doubt that Palmer had knowingly or intentionally possessed the lookalike substance as required to find him guilty of Class A misdemeanor possession of a synthetic drug lookalike substance, then it could consider whether he had committed possession of a lookalike substance as a Class B infraction, which required the State to prove by the greater weight of the evidence that Palmer possessed synthetic drug lookalike substance.

[25] The jury found Palmer guilty of Class A misdemeanor possession of a synthetic drug lookalike substance in Count 5 and guilty of the lesser-included infraction of Count 4. The jury determined that Palmer was not guilty of Counts 1, 2, and 3.

[26] During the sentencing hearing, the parties returned to their discussion regarding the July 2019 repeal of INDIANA CODE § 35-48-4-11.5, the statute under which the State had charged Palmer in Count 5 for his March 2018 offense and under which the jury had convicted him. Palmer asked the trial court to enter judgment of conviction on the Class A misdemeanor possession of a lookalike substance in Count 5 as a Class C misdemeanor. Palmer argued that the trial

court should enter judgment of conviction and sentence Palmer as a Class C misdemeanor because under a different statute, INDIANA CODE § 35-48-4-4.6, a person who knowingly or intentionally possesses a substance represented to be a controlled substance commits a Class C misdemeanor. *See* I.C. § 35-48-4-4.6(c). Palmer did not provide the trial court with any caselaw to support his request for a lesser judgment and sentence.

[27] The trial court asked the State if it objected to Palmer's request, and the prosecutor stated that it did. The State pointed out that INDIANA CODE § 35-48-4-11.5 was the statute in effect at the time of Palmer's offense. The State also noted that, since the time that INDIANA CODE § 35-48-4-11.5 had been repealed, the State had not charged lookalike substance cases under INDIANA CODE § 35-48-4-4.6 as mentioned by Palmer and had, instead, been charging these cases under INDIANA CODE § 35-48-4-7, which provided that a person who knowingly or intentionally possessed a controlled substance analog commits possession of a controlled substance, a Class A misdemeanor. *See* I.C. § 35-48-4-7(a). The State argued that the trial court should enter judgment and sentence on Palmer's conviction as a Class A misdemeanor.

[28] The trial judge, stating that he thought "this fits under the definition of a C misdemeanor" and that he would "give [Palmer] the benefit of that[,]" entered judgment of conviction on the Class A misdemeanor conviction in Count 5 as a Class C misdemeanor. (Tr. Vol. 3 at 202). Specifically, the trial court entered judgment of conviction for the offense of possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 but did so as a Class C misdemeanor. The

trial court also vacated Palmer's infraction determination in Count 4 for double jeopardy purposes. The trial court then sentenced Palmer on his reduced Class C misdemeanor conviction to sixty (60) days, with six (6) days executed and fifty-four (54) days suspended, to be served at the county jail. Palmer now appeals.

# Decision

[29] Palmer argues that the trial court abused its discretion by admitting the Google location data into evidence and that the evidence is insufficient to support his conviction. The State cross appeals, arguing that trial court erred by entering judgment of conviction and imposing a sentence on Palmer's conviction under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor where he had been charged and found guilty as a Class A misdemeanor. We will review each argument in turn.

## 1. Admission of Evidence

[30] Palmer first challenges the admission of evidence during his jury trial.[5] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of

---

[5] Palmer raises the issue in the context of the denial of his motion to suppress. Because Palmer is appealing following a completed trial, the issue is "'more appropriately framed'" as one of whether the trial court abused its discretion by admitting the evidence during the trial. *Brown v. State*, 929 N.E.2d 204, 206 n.1 (Ind. 2010) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)), *reh'g denied*. Therefore, we will treat his appellate issue as a challenge to the admission of evidence.

discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[31] Palmer challenges the admission of the Google location data, which he acknowledges "was used at trial to support the State's argument that Palmer lived at the [Whittier house] location where the raid took place." (Palmer's Br. 11). Palmer argues that the officer's failure to give him a *Pirtle* warning before he gave the officer his passcode to his phone was in violation of Fifth Amendment rights.

[32] We need not, however, address Palmer's challenge to the admission of the Google location data because it is moot. "[W]hen we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination where absolutely no change in the status quo will result." *Sainvil v. State*, 51 N.E.3d 337, 342 (Ind. Ct. App. 2016) (citations omitted), *trans denied*. Our review of the record reveals that the challenged evidence was not used to support Palmer's possession of a lookalike substance conviction, which is his sole conviction and which was based on evidence that he had actual possession of a lookalike substance in his jacket. Instead, the State introduced the Google location data as evidence that Palmer lived in the Whittier house and that he constructively possessed the gun, marijuana, and lookalike substances found inside the house. The jury, however, found Palmer not guilty of the charges relating to constructive possession. Accordingly, we will not review Palmer's challenge to the admission of this evidence. *See, e.g.*,

*id.* (declining to review a defendant's moot challenge to a prosecutor's comment about the defendant's ownership of a gun because the jury acquitted the defendant of the carrying a handgun charge and because no effective relief could be granted).

## 2. Sufficiency of Evidence

[33] Palmer argues that the evidence was insufficient to support his conviction for possession of a lookalike substance.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider

both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[34] At the time of Palmer's offense, INDIANA CODE § 35-48-4-11.5, the statute under which he was charged and convicted, provided that "[a] person who knowingly or intentionally possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor." I.C. § 35-48-4-11.5(c).

[35] Palmer asserts that "[i]n this case, no reasonable jury could have found [him] guilty beyond a reasonable doubt of the crime of possession of a synthetic or lookalike drug." (Palmer's Br. 16). Specifically, Palmer argues that there is insufficient evidence to show that he constructively possessed the lookalike substances found in the house. We need not address the constructive possession argument because our review of evidence presented in this jury trial reveals that Palmer had actual possession of a lookalike substance. Specifically, the State presented evidence that, inside Palmer's jacket pocket, he had a bag of a substance that was later determined to be a lookalike substance. Palmer suggests that there was insufficient evidence to show that he possessed the lookalike substance found in his jacket pocket because he had told the police officer that it was marijuana. Such argument is nothing more than a request to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. From the evidence presented at trial, the jury could have reasonably determined that Palmer possessed a lookalike substance. Accordingly, we affirm Palmer's conviction.

### 3. Cross-Appeal Issue

The State raises a cross-appeal issue, arguing that the trial court erred by entering judgment of conviction and imposing a sentence on Palmer's possession of a lookalike substance conviction under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor where he had been charged and found guilty of the offense as a Class A misdemeanor. Before its July 2019 repeal and at the time of Palmer's March 2018 offense, INDIANA CODE § 35-48-4-11.5 provided as follows:

> (a) As used in this section, "synthetic drug lookalike substance" has the meaning set forth in IC 35-31.5-2-321.5(a)(2).
>
> (b) A person who possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a Class B infraction.
>
> (c) *A person who knowingly or intentionally possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor.* However, the offense is a Level 6 felony if the person has a prior unrelated conviction under this section or under section 10.5 of this chapter.

(Emphasis added.)

Here, the trial court entered judgment of conviction for Palmer's offense of possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 but did so as a Class C misdemeanor and then imposed a sentence for that Class C misdemeanor. The State asserts that the trial court should have applied the

statute in effect at the time of Palmer's offense, INDIANA CODE § 35-48-4-11.5, which provided that Palmer's possession of the lookalike substance was a Class A misdemeanor. The State also argues that the trial court's judgment of conviction and sentence are improper because the trial court entered a judgment of conviction for a "non-existent offense of possession of a synthetic drug or lookalike as a Class C misdemeanor." (State's Br. 25).

[38] Palmer makes no argument that the trial court properly entered a judgment of conviction and sentence for his possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor when he had been convicted of a Class A misdemeanor. Instead, Palmer challenges the State's ability to raise this cross-appeal challenge and argues that the State's cross-appeal is not authorized by INDIANA CODE § 35-38-4-2, the statute that sets forth the circumstances under which the State is permitted to appeal in a criminal case ("the State's appeal statute).[6]

---

[6] INDIANA CODE § 35-38-4-2 provides:

Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:

(1) From an order granting a motion to dismiss one (1) or more counts of an indictment or information.

(2) From an order or judgment for the defendant, upon the defendant's motion for discharge because of delay of the defendant's trial not caused by the defendant's act, or upon the defendant's plea of former jeopardy, presented and ruled upon prior to trial.

(3) From an order granting a motion to correct errors.

(4) Upon a question reserved by the state, if the defendant is acquitted.

(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment.

[39]     We recognize that "[t]he legislature has enumerated several situations in which criminal appeals by the State 'may be taken[.]'" *Hardley v. State*, 905 N.E.2d 399, 401 (Ind. 2009) (citing INDIANA CODE § 35-38-4-2). There are, however, limited circumstances where the State can raise an appeal issue that is not specifically contained in the State's appeal statute. For example, "when the State claims that a trial court failed to sentence a defendant in accordance with statutory requirements, the State may raise that claim for the first time on appeal." *Stephens v. State*, 818 N.E.2d 936, 939 (Ind. 2004). *See also Hardley*, 905 N.E.2d at 403 (holding that "the State may challenge an illegal sentence 'for the first time on appeal'") (quoting *Stephens*, 818 N.E.2d at 939). Our supreme court also explained that, although not falling within the State's appeal statute, the State may "present claims of illegal sentence on appeal when the issue is a pure question of law that does not require resort to any evidence outside the appellate record" because "such a challenge is the substantial equivalent of a statutory motion to correct erroneous sentence" under Indiana Code § 35-38-1-15. *Hardley*, 905 N.E.2d at 403.

---

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

    (A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

    (B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

    (C) the remedy by appeal after judgment is otherwise inadequate.

[40] Here, the State is essentially arguing that the trial court's Class C misdemeanor judgment and resulting sentence was illegal because the offense of possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor did not exist and that the trial court, therefore, could not legally enter a judgment of conviction for a nonexistent crime.

[41] We agree with the State that the trial court did not have statutory authority to enter a judgment of conviction for the offense of possession of a lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor. The State charged Palmer under INDIANA CODE § 35-48-4-11.5 with possession of a lookalike substance as a Class A misdemeanor, and the jury found him guilty of that offense as a Class A misdemeanor. As written at the time of Palmer's offense, INDIANA CODE § 35-48-4-11.5 contained only the classification of a Class A misdemeanor for a person's knowing or intentional possession of a synthetic drug or synthetic drug lookalike substance. Therefore, the trial court did not have statutory authority to enter the judgment of conviction for Palmer's knowing or intentional possession of the lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor. Because the trial court erroneously entered a judgment and imposed a sentence on Palmer's possession of a lookalike substance conviction under INDIANA CODE § 35-48-4-11.5 as a Class C misdemeanor, we reverse the trial court's imposition of the Class C misdemeanor judgment and sentence and remand to the trial court with instructions to enter judgment of conviction on Palmer's possession of a

lookalike substance under INDIANA CODE § 35-48-4-11.5 as a Class A misdemeanor and to resentence Palmer in accordance with that conviction.[7]

[42] Affirmed in part, reversed in part, and remanded.

Bradford, C.J., and Weissmann, J., concur.

---

[7] We express no recommendation of the sentence to be imposed. Indeed, we recognize that, even under the sentencing statutes for Class A misdemeanors, the trial court has may ultimately sentence Palmer to the same sentence. *See* IND. CODE § 35-50-3-2 (providing that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year").